UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **KURELLA S. RAO** | **14-11173** |
| | SECTION A |
| DEBTOR | CHAPTER 7 |
| | |
| **HENRY G. HOBBS, JR.** | ADVERSARY NO. |
| **ACTING UNITED STATES TRUSTEE** | **14-1049** |
| PLAINTIFF | |
| VERSUS | |
| **KURELLA S. RAO** | |
| DEFENDANT | |

## OPINION

A Complaint to Deny Discharge or, in the Alternative, Dismiss or Convert was filed by the Office of the United States Trustee ("UST") on October 1, 2014. In its Complaint, the UST alleged that Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs were false as Debtor had failed to disclose several assets owned on the Petition date and had failed to amend after discovery was made by the UST. Debtor, Kurella S. Rao ("Debtor"), alleged that the errors were through mistake or oversight, immaterial and Debtor did not intend to hinder, delay or defraud the UST in the administration of his case. Trial on the Complaint was held on February 4, 2015, after which the Court took the matter under advisement.

**I. FACTS**

On May 12, 2014, Kurella S. Rao ("Debtor") filed for voluntary relief under Title 11, chapter 7 of the United States Bankruptcy Code.[1] On that same date Debtor filed his Schedules of Assets and Liabilities and Statement of Financial Affairs.[2] Debtor's wife, Vijaya Rao, as "attorney-in-fact for Kurella S. Rao" signed the bankruptcy petition under penalty of perjury.[3] A Chapter 7 trustee was appointed and an initial meeting of the creditors was held June 20, 2014.[4] Debtor did not appear and the meeting was continued.[5]

The continued meeting of creditors was held on August 1, 2014.[6] Debtor appeared and testified that prior to filing for bankruptcy relief, Vijaya Rao reviewed the bankruptcy documents with him line-by-line *via* telephone. Although he never saw the documents, he authorized Vijaya Rao to sign the documents on his behalf and file his case.[7]

As of the Petition date, Debtor reported one checking account with a balance of $100.00 in the Belize Bank of Dargia ("Belize Bank Account") and no automobiles.[8]

---

[1] Exhibit ("Exh.") 1.

[2] Exh. 1.

[3] Exh. 1, p. 3; Exh. 2. Adversary Proceeding Pleading 16, Pre-Trial Order, Uncontested Material Fact 3.

[4] Adversary Proceeding Pleading 16, Pre-Trial Order, Uncontested Material Facts 5 and 7.

[5] Adversary Proceeding Pleading 16, Pre-Trial Order, Uncontested Material Fact 7.

[6] Main Case Pleading 22.

[7] Adversary Proceeding Pleading 16, Pre-Trial Order, Uncontested Material Fact 11.

[8] Exh. 1, pp. 9 and 11; Adversary Proceeding Pleading 16, Pre-Trial Order, Uncontested Material Facts 19 and 23.

Not disclosed on his Schedules of Assets was a Wells Fargo Essential Checking Account ("Wells Fargo Account")[9] with a balance on the Petition date of $616.68.[10] Debtor also maintained a Capital One Checking Account ("Capital One Account")[11] which on the Petition date had a balance $931.10.[12] Debtor also owned a 1996 Toyota 4Runner. In addition, Debtor failed to disclose several transfers to his wife and daughter within a year of his filing and his wife's income.

Debtor is a physician and United States citizen living in Belize. His last residence prior to moving to Belize was in New Orleans, Louisiana, where his wife still resides. Debtor has lived apart from his wife for approximately four (4) years although they remain married under a community of acquets and gains regime. He provides her with financial support on a regular basis.

Debtor represented in his filing documents that his gross monthly income was $829.72.[13]

Within a year of filing for relief, Debtor transferred $28,507.50 to his wife and $9,000 to his daughter. None of the transfers were disclosed on Debtor's Statement of Financial Affairs[14] and most were made from the undisclosed Wells Fargo Account, the last having been made on December

---

[9] Exh. 5.

[10] Exh. 5, third to last page.

[11] Exh. 6, fourth to last page. Debtor testified that the checking account was initially in his wife's name only. However, before the bankruptcy filing he had his name placed on the account.

[12] Exh. 6, last page.

[13] Exh. 1, p. 36.

[14] Exh. 1, pp. 41, 42, and 44.

16, 2013, or five (5) months before filing.[15]

## II. ANALYSIS

11 U.S.C. § 727 provides, in pertinent part:

(a) The court shall grant the debtor a discharge, unless—
  (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed . . .
    (A) property of the debtor, within one year before the date of the filing of the petition.
  (4) the debtor knowingly and fraudulently, in or in connection with the case—
    (A) made a false oath or account.

The UST contends that Debtor's discharge should be denied pursuant to §727(a)(2)(A) because Debtor intentionally transferred or concealed property within one year before the date of filing his bankruptcy petition. The UST also contends that denial of discharge is warranted under §727(a)(4)(A) because Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs contain a series of material errors which were made fraudulently or with a reckless disregard for the truth.

The UST has the burden of proving the essential elements of § 727(a)'s cause of action by a preponderance of the evidence.[16]

### A. Denial of Discharge under § 727(a)(2)(A)

To deny discharge under § 727(a)(2)(A), the following four elements must be proven: (1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition;

---

[15] *See*, Exh. 4 and Exh 5. In December, 2013, Debtor transferred, from his Wells Fargo Account, $6,000.00 to his wife and $9,000.00 to his daughter. In September, 2013, Debtor transferred, from his Belize Bank Account, $22,507.50 to his wife.

[16] *Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991).

(4) with intent to hinder, delay, or defraud a creditor or officer of the estate.[17] The first three factors are not in question. Debtor admits that he transferred property which belonged to him within one year of the filing of the petition. In dispute is whether Debtor had the requisite fraudulent intent.

While a showing of actual intent is required, such intent "may be inferred from the actions of the debtor and may be proven by circumstantial evidence."[18] As the court observed in *In re Glaser*, 49 B.R. 1015, 1019 (D.C. N.Y. June 7, 1985), because a debtor rarely admits his intent was fraudulent, such intent "may be established by circumstantial evidence or by inferences drawn from a course of conduct."

> Factors which tend to evidence actual intent to defraud include:
>
> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.[19]

All of the factors or badges of fraud do not have to be present to support a finding of fraudulent intent.[20] Further, there is "a presumption of fraudulent intent when a debtor transfers property to relatives."[21]

---

[17] *Matter of Chastant*, 873 F.2d 89, 90 (5th Cir. 1989).

[18] *Id*. at 91.

[19] *Chastant,* 873 F.2d at 91. *See also In re Baum*, 248 Fed. Appx. 599, 604, 2007 WL 2810001, *4 (5th Cir. 2007); *Babin v. Caddo East Estates I, Ltd*, 2013 WL 4048979, *3 (E.D. La. Aug. 9, 2013).

[20] *Babin,* 2013 WL 4048979*,* *3 n.7.

[21] *In re Pratt*, 411 F.3d 561, 565-66 (5th Cir. 2005).

Prior to and following the filing of this case, Debtor maintained a bank account at Wells Fargo. Every month, Debtor's Social Security benefits of $730.00 were electronically deposited into the account. Debtor alleges that he "forgot" about this account because he rarely used it. He also claims that because its balance on the date of filing was only $616.68 the omission was immaterial.

Debtor consulted with his bankruptcy counsel as early as November 15, 2013, when he paid him a $1,075.00 retainer.[22] Interestingly, although no withdrawals were made from the Wells Fargo Account from May 2013 to December 2, 2013, after this consultation, Debtor began withdrawing large deposits regularly.

Bank statements offered into evidence from May 2013 through May 2014 reflect that a year prior to filing bankruptcy, the account had a balance of $10,316.68 to which $730.00 was added each month.[23] From May 2013 to early December 2013, Debtor did not withdraw any funds and the account's balance had climbed to over $14,000.00. On December 2, 2013, Debtor began a series of withdrawals that drained the account to a modest balance of $417.68 by December 26, 2013. Following this series of withdrawals, Debtor withdrew each subsequent deposit into the account each month resulting in an account balance of $616.68 as of May 2014.

After the UST discovered this account, bank statements were obtained. Debtor admits he transferred a total of $6,000.00 from this account to his wife and $9,000 to his daughter in December, 2013. Debtor also admits that he transferred $22,507.50 from his Belize Bank Account to his wife on September 7, 2013. These transactions were omitted from his Statement of Financial Affairs. Yet Debtor expects this Court to believe that he "forgot" about an account from which he

---

[22] *See*, Statement of Financial Affairs, P-1, page 44, question 9. Payments related to debt counseling or bankruptcy.

[23] Exh. 5.

had moved over fifteen thousand dollars a mere five (5) months prior to filing and hundreds every month until filing. He also asserts that he "forgot" to disclose transfers to relatives from both the Wells Fargo Account and the Belize Bank Account amounting to over $37,000.00 within the same period.[24]

There was no consideration given in exchange for the transfers to his wife. Although Debtor claimed to owe his daughter the $9,000.00 she received, no proof of the debt was offered. Even if the Court were to believe that a debt existed, its repayment on the eve of bankruptcy would have carried a legal presumption that it was preferential and subject to attack.

Based upon the above-described course of conduct, the inference can be made that Debtor made the transfers of cash with fraudulent intent to hide assets from the UST and his creditors with the intent to hinder or delay their repayment.

### B. Denial of Discharge under § 727(a)(4)(A)

A debtor's discharge may be denied if the debtor makes a false oath in connection with his bankruptcy filing.[25] A false oath has this effect since,

> Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential, because the schedules serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true.[26]

---

[24] The Statement of Financial Affairs clearly requires Debtor to disclose all transfers to relatives of the debtor. *See*, Statement of Financial Affairs, Question 3.(c) and 11 U.S.C. § 101(31). While transfers to Debtor's wife may not have been transfers from his estate (assuming a community regime), they nonetheless omitted critical information which would have led to the discovery of other accounts, *i.e.*, the Wells Fargo Account and the Capital One Account. In the case of the Belize Bank Account, disclosure of Debtor's transfers to his wife would also have identified undisclosed community accounts and raised questions regarding Debtor's income and cash on hand.

[25] *Pratt*, 411 F.3d at 566.

[26] *Id.* (quoting *In re Beaubouef*, 966 F.2d 174, 179 (5th Cir. 1992)) (internal quotation omitted).

To establish a false oath under § 727(a)(4)(A), a plaintiff must show that (1) the debtor made a . . . statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case.[27] "Circumstantial evidence may be used to prove fraudulent intent, and the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent."[28]

In this case, the first two elements are not in dispute. Debtor made several false statements under oath. The bankruptcy petition, Schedules of Assets and Liabilities and Statement of Financial Affairs were all signed under penalty of perjury, the equivalent of an oath.[29] Debtor falsely represented, on Schedule B-Personal Property, that he had one Belize Bank Account with a balance of $100.00 and that he did not own an automobile. In truth, Debtor did own an automobile and he had a total of three bank accounts.

Debtor also falsely reported, on his Statement of Financial Affairs, that he had made no payments to insiders, such as family members, within one (1) year of his bankruptcy filing and had made no other transfers, other than property transferred in the ordinary course of business, within two (2) years of his bankruptcy filing. In truth, Debtor had paid family members a total of $37,507.50 within the year preceding his bankruptcy.

Additionally, Debtor represented on Schedule I that his non-filing spouse had no income and received no "[f]amily support payments." Debtor, however, admitted at trial that his representation

---

[27] *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009) (quoting *In re Sholdra*, 249 F.3d 380, 382 (5th Cir. 2001)).

[28] *Id.*

[29] *In re Gannon*, 173 B.R. 313, 320 (Bankr. S.D. N.Y. Oct. 19, 1994).

was not true in that his wife received money from his daughter for babysitting services.

Debtor admits that his Schedules of Assets and Liabilities and Statement of Financial Affairs were not accurate. However, he argues that the omissions were not intentional because the accounts were small and infrequently used by him.

As to the Wells Fargo Account, deposits of over $18,000.00 within the year of filing are hardly minor.[30] Further, Debtor's contention that he simply "forgot" the account strains credibility as he systematically began moving funds from it right up until the day he filed for relief. Debtor also fails to explain why he omitted disclosing these transfers despite a specific question on the issue in his Statement of Financial Affairs. The movement of over $18,000.00 in funds by an individual claiming only $26,705.00 in total assets on the Petition date[31] is unlikely to have been 'forgotten.'

Debtor's Capital One Account is similarly problematic. The UST submitted into evidence bank statements on the account from December 15, 2012 - May 14, 2014.[32] Deposits of $37,060.00 were made into the account during 2013. In 2014, $9,650.00 was deposited in the first five (5) months of the year. No explanation as to the source of the funds was offered, which given Debtor's professed income, is more than curious.[33]

On Schedule I Debtor swore to income of approximately $829.00 US and Social Security benefits of $720.00 per month.[34] In support of this attestation, Debtor submitted "Certificates of

---

[30] Exh. 5.

[31] Exh. 1, p. 6.

[32] Exh. 6.

[33] It appears that at least the $9,600 deposited into Capital One from December 2013 to May 2014 was due to withdrawals from the Wells Fargo account. However, this was not proven at trial.

[34] Exh. 1, pp. 36-37.

9

Assessment" by the Income Tax Department in Belize.[35] Each Certificate reflects the declared gross income of Debtor. In 2012, Debtor declared income of $19,813.00 Belize dollars or approximately $9,900.00 US, for the period of January through September, 2012. This roughly equates to $825.00 per month. In 2011, Debtor declared $28,844.00 Belize or $12,200.00 US. No certificates were offered for 2013 or 2014 but Debtor testified that his income was consistent with 2012. How then did Debtor deposit over $37,000.00 into his Capital One Account in 2013 and $9,900.00 in the first five (5) months of 2014? What was the source of these funds? Not the Wells Fargo Account as the deposits in 2013 predate his withdrawals from the account. So with only $14,000.00 in income in 2013, Debtor managed to deposit over $37,000.00 from unaccounted for sources. This is in addition to the $14,000.00 in deposits he held at Wells Fargo.

Debtor's Belize Bank Account[36] provides what this Court suspects is a partial answer. Although Debtor only produced three (3) statements reflecting transactions from July 31, 2013 - July 31, 2014, deposits of $31,243.00 were made. While many of the deposits were for salary payments in accord with Debtor's stated income, several very large deposits totaling $16,500.00 were also made. Following each of these large deposits an international wire to the United States was made. Where did these funds come from? Why were they only deposited shortly before transfer to the United States?

Debtor admitted that he was often paid in cash by his patients. However, Debtor's checking account is curiously devoid of regular cash deposits except when he wanted to transfer funds to the United States. When questioned by the Court for an explanation, the Debtor had none. When

---

[35] Exh. 3.

[36] Exh. 4.

confronted with the Court's suspicion that he was not disclosing income or cash on hand, the Debtor did not refute the conclusion.

The fact that the transfers from Belize or deposits into Capital One exceed Debtor's stated income by many multiples; that they are made in large lump sums and in the case of the Belize Bank Account, only when money is wired out; leads to the conclusion that Debtor is not declaring all of his income or assets.[37] Debtor's failure to offer any explanation at trial when confronted with these facts is further evidence.

It is also worth noting that Debtor routinely used all three accounts, the Belize Bank, Capital One and Wells Fargo, quite literally up to the date of his filing. Therefore, his argument that two of the accounts, Capital One and Wells Fargo, were forgotten because they were infrequently used is not credible. Debtor knew that his Schedules and Statement of Financial Affairs were false.

Given the number of Debtor's false representations, the Court finds fraudulent intent exists. The failure to report two bank accounts, the failure to report numerous transfers of funds to family members, the failure to report a car, the failure to report his non-filing spouse's income, and the failure to offer any explanation as to the source of tens of thousands in deposits over and above his documented income when considered together, evidences a "reckless disregard for the truth," a fact sufficient to support a finding of fraudulent intent.[38]

The final element, materiality, exists even if one only considers the bank accounts that Debtor failed to report. The bank accounts were active with substantial funds flowing in and out of the accounts. Even if bank accounts have little or no balance, they are generally considered

---

[37] For example, Debtor's Schedules only reflect $5.00 in cash and $100.00 on deposit in banks. Exh. 1, p. 9.

[38] *See Duncan, supra*.

material. "'Few, if any, assets are more material to a consumer debtor's financial affairs than a bank account, for it is from that kind of asset that the creditors can discern not only an overall picture of the debtor's financial affairs, but also the details of the debtor's finances.'"[39]

Having determined that the UST has established a *prima facie* case, the burden shifts to Debtor to "present evidence that he is innocent of the charged offense."[40] In addition to arguing that he unknowingly did not list assets, a defense which this Court does not find credible, Debtor points to the fact that he ultimately did provide the necessary information. He eventually informed the UST of the existence of the Well Fargo Account and the Capital One Account and the vehicle. Debtor argues that if he had truly wanted to conceal these assets he never would have provided the information.

The Court finds Debtor's argument unpersuasive. While Debtor may have supplied the information upon questioning, it should not have been necessary for the UST to go on a fishing expedition to pull from Debtor information which should have been forthcoming. Such an approach improperly relieves a debtor from the burden of accurately reporting his or her assets on the bankruptcy forms, forms which creditors should be able to rely upon in evaluating a debtor's finances.

---

[39] *Pratt*, 411 F.3d at 567 (quoting *In re Baldridge*, 256 B.R. 284, 290 (Bankr. E.D. Ark. 2000)).

[40] *Duncan*, 562 F.3d at 696.

## III. CONCLUSION

For the foregoing reasons, the Court denies Debtor a discharge under the provisions of 11 U.S.C. § 727(a)(2)(A) and § 727(a)(4)(A).[41] A Judgment in accord with this Opinion will be separately rendered.

---

[41] In light of the Court's finding in this regard, the UST's alternative argument, for a dismissal under the provisions of 11 U.S.C. § 707(b)(3), is moot.